CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 7 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| JOHNNY F. GODFREY, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:06-cv-00187 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WASHINGTON COUNTY, VIRGINIA, | ) | |
| SHERIFF, et al., | ) | **By: Hon. James C. Turk** |
|     Defendants. | ) | **Senior United States District Judge** |

Johnny F. Godfrey, the pro se plaintiff in this action under the Civil Rights Act, 42 U.S.C. § 1983, raised several claims related to his extradition from North Carolina to Washington County, Virginia and to living conditions at the Southwestern Virginia Regional Jail ("SWVRJ" or "the jail"). The court previously dismissed all but three of his claims in this action: denial of extradition proceedings, denial of access to courts, and deliberate indifference to serious medical needs. The matter is now ripe for consideration of defendants' dispositive motions. Upon review of the record, the court concludes that the motions to dismiss by Defendants Evans and Huff and the motion for summary judgment by Deputies Malone and Cullop must be granted, but that the motion to dismiss and the motion for summary judgment by Sheriff Newman must be denied.

## I. BACKGROUND

Godfrey styled his initial pleadings in this case as a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. The court dismissed Godfrey's habeas claims without prejudice for failure to exhaust state court remedies. Given the nature of his allegations, however, the court also construed Godfrey's submissions as a civil rights action, pursuant to § 1983, and directed Godfrey to amend to state specific claims against individual officials as defendants. Godfrey submitted numerous additional documents, restating and revising his allegations. After sorting through these

voluminous submissions, the court addressed his many amendments, dismissed all habeas claims and several § 1983 claims without prejudice, and ultimately ruled that only three claims remained before the court in this case:

a.  The Washington County Sheriff and two unknown transport officers wrongfully transported Godfrey from North Carolina to Virginia in March 2006 without following proper extradition procedures;

b.  The Washington County Sheriff and Tim Evans [1] denied plaintiff adequate access to legal materials, legal postage, and other materials necessary for pursuing his litigation efforts while he was housed at the SWVRJ in 2006; and

c.  The Washington County Sheriff, Tim Evans, unknown jail medical directors, and Mrs. Huff [2] acted with deliberate indifference to plaintiff's serious medical needs while he was housed at the SWVRJ in 2006.

The court then directed the clerk to attempt service of process upon the defendants identified by name or title and notified Godfrey that he would need to identify the unknown defendants by name so that they could be served process or all claims against them would be dismissed.[3]

Fred Newman waived service as Sheriff of Washington County and subsequently filed a motion to dismiss. Tim Evans and Patty Huff also filed separate motions to dismiss. The sheriff then filed a motion for summary judgment, arguing that Godfrey had waived extradition proceedings in North Carolina. Godfrey filed a motion that the court construed as a discovery request for names

_____

[1]Godfrey identifies Tim Evans as the jail's program director.

[2]Godfrey identifies Mrs. Huff as a nurse at the jail.

[3]The unknown jail medical directors in Claim 3 have never been identified by name or served with process in this case. Therefore, all claims against them could be dismissed, pursuant to Fed. R. Civ. P. 4(m). However, as the court finds herein that Godfrey's allegations as a whole in this case fail to state any claim that anyone at the jail was deliberately indifferent to his specific, serious medical needs, the court will dismiss all claims against the unknown directors, pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim.

2

of the two unknown transport officers. Sheriff Newman responded to the request by identifying B.R. Malone and Susan M. Cullop as the Washington County Sheriff's Deputies who transported Godfrey from Polk County, North Carolina, in March 2006. These defendants waived service and filed a motion for summary judgment. Newman filed a supplemental memorandum in support of his motion for summary judgment, arguing that Godfrey has no actionable § 1983 claim against Newman or the deputies who transported him from North Carolina to Virginia in March 2006. The court notified Godfrey of each of the defendants' motions as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned plaintiff that judgment might be granted for the defendants if he did not respond to the motion by filing affidavits or other documents contradicting the government's evidence or otherwise explaining his claims. The plaintiff responded to defendants' motions.

## II. OPINION

The court may properly grant a motion to dismiss under Rule 12(b)(6) when, construing allegations in light most favorable to plaintiff and assuming facts alleged in the complaint to be true, it is clear as a matter of law that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). In deciding a Rule 12(b)(6) motion, the court can rely only upon the allegations in the complaint and those documents attached as exhibits or incorporated by reference. See Simons v. Montgomery County Police Officers, 762 F.2d 30, 31 (4th Cir. 1985). While the court must construe factual allegations in the nonmoving party's favor and treat them as true, the court need not treat the complaint's legal conclusions as true. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (in 12(b)(6) analysis, court need not

3

accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56( c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

## A. EXTRADITION CLAIMS

### 1. Background

Godfrey alleges the following sequence of facts from which his extradition claims arise. He was charged with larceny-related offenses in Washington County and Danville, Virginia in 2005. He was arrested on warrants related to these Virginia criminal charges in Spartanburg, South

4

Carolina, waived extradition proceedings on September 8, 2005, and was transported back to Virginia. He obtained release on bond from both the Washington County Circuit Court and the Circuit Court for the City of Danville. After his release on bond, he went to Polk County, North Carolina, allegedly to assist state and federal law enforcement authorities in some capacity. He maintains, however, that he "made" all required court appearances in the Virginia criminal proceedings.

According to Godfrey, in January 2006, Polk County authorities arrested and detained him on separate charges for bad checks, brought against him by his common law wife in North Carolina.[4] Godfrey alleges that he was exonerated on these charges and released on March 16, 2006. That same day, two deputies from the Washington County Sheriff's Department arrived in Polk County and transported Godfrey back to Virginia, allegedly without extradition proceedings. Godfrey was booked at the Washington County Sheriff's Department and then confined at the SWVRJ. After his conviction on the Washington County charges, for which he allegedly received a sentence of probation, SWVRJ authorities transferred him to the Danville City Jail to await his trial on separate charges there. Godfrey asserts that he did not waive extradition from North Carolina to Virginia and that the defendant sheriff and his two deputies who served as transport officers on March 16, 2006, knowingly transported him across state lines without ensuring that he first received due process protections.

---

[4]On January 24, 2006, the Washington County grand jury returned an indictment charging Godfrey with conspiracy and grand larceny for alleged conduct in March 2005, and the clerk of the Washington County Circuit Court issued a capias for Godfrey's arrest on these charges on January 24, 2006. See Defs' M. Sum. Jdgmt (Dkt. No. 71), Newman Affid., Attach. 4.

5

## 2. Sheriff's Motion to Dismiss

In response to these allegations, Sheriff Newman first filed a motion to dismiss, alleging that Godfrey's claims were moot because Godfrey sought only release from confinement, but had been transferred to another jail facility. This motion to dismiss must be denied. It is true that Godfrey's many rambling submissions are anything but clear and plain as required by Fed. R. Civ. P. 8. As he is a pro se litigant, however, the court has struggled to construe his pleadings liberally so as to avoid dismissing possibly meritorious claims arising from his facts merely because he cannot make coherent legal arguments. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). Included in the paperwork served on Sheriff Newman was the court's order and opinion of April 28, 2006, expressly finding that plaintiff's allegations stated specific, actionable § 1983 claims against the Washington County Sheriff.[5] See Young v. Nickols, 413 F. 3d 416, 419 (4th Cir. 2005); Wirth v. Surles, 562 F.2d 319 (4th Cir. 1977). Therefore, the court will deny the sheriff's motion to dismiss.

## 3. Defendants' Motions for Summary Judgment

Sheriff Newman has abandoned his argument, raised in his initial memorandum in support of summary judgment, that Godfrey had waived extradition from North Carolina to Virginia in March 2006. The sheriff now admits, and it is clear from the record, that the waiver document to

---

[5]Sheriff Newman's motion to dismiss argues that Godfrey's claims against him are moot, because they sought only injunctive relief and Godfrey had been moved to another jail before this action was served on Newman. Godfrey's initial pleading in this case was styled as a habeas petition and sought release from confinement, not damages. Simultaneously, however, Godfrey brought claims about extradition, jail conditions and medical treatment, which the court construed as claims arising under 42 U.S.C. § 1983. Godfrey subsequently submitted numerous amendments seeking "§ 1983 relief," including monetary damages. Given his pro se status, the court considers these amendments to be supplements to his complaint.

6

which the sheriff referred was actually Godfrey's executed waiver of extradition from South Carolina to Washington County, Virginia, in September 2005 related to different criminal charges. The sheriff also states that his mistaken reliance on the September 2005 waiver caused him to name Deputies Cullop and Malone as the deputies who transported Godfrey on March 16, 2006. He now indicates that Deputies Stephan G. Reed and William T. Slemp transported Godfrey from Polk Carolina to Virginia on March 16, 2006. The court will consider Godfrey's complaint to be amended to correctly identify these defendants and will direct the clerk to attempt service of process on them.

In support of their separate motion for summary judgment, Cullop and Malone state that they transported Godfrey from Spartanburg, South Carolina in September 2005, pursuant to his waiver of extradition. They state that they had no personal involvement whatsoever in transporting Godfrey from Polk County, North Carolina in March 2006. Godfrey's lawsuit does not claim that the September 2005 extradition from South Carolina was unlawful in any way, and Godfrey offers no challenge to defendants' evidence that they did not participate in the March 2006 extradition that is the subject of this lawsuit. Thus, no genuine issue of material fact remains in dispute, and the court concludes that Defendants Cullop and Malone are entitled to summary judgment as a matter of law. The court will grant their motion accordingly.

In his supplemental memorandum in support of summary judgment, Newman argues that he and his deputies had no constitutional duty on March 16, 2006, to inquire into whether North Carolina authorities had provided Godfrey with all required extradition proceedings. In the alternative, Newman argues that he and his deputies are entitled to qualified immunity against Godfrey's claims for monetary damages related to his allegedly unlawful extradition. Upon review of the record, the court concludes that Newman's motion must be denied.

7

The Fourth Circuit has held that "a complaint alleging the arrest and transportation of a fugitive without extradition proceedings [creates] a cause of action pursuant to 42 U.S.C. § 1983." Wirth v. Surles, 562 F.2d 319, 323 (4th Cir. 1977) (finding actionable § 1983 claim against South Carolina authorities for arresting plaintiff in Georgia and transporting him to South Carolina without extradition proceedings).[6]  The court emphasized in Wirth that "law enforcement officials [may not] ignore the clear mandates of state and federal extradition laws in the apprehension and transportation of fugitives." Id. at 323.  Furthermore, a cause of action for at least nominal damages exists when a prisoner was extradited or transferred from one state to another state for criminal prosecution without the benefit of a pre-transfer hearing when he requested such a hearing.[7] Arebaugh v. Dalton, 730 F.2d 970, 972 (4th Cir. 1984) (citing Cuyler v. Adams, 449 U.S. 433, 449-450 (1981)).

As Godfrey's suit alleges removal from North Carolina without extradition proceedings, his procedural rights were defined by the North Carolina Uniform Criminal Extradition Act (NCUCEA), N.C. Gen. Stat. § § 15A-721-750.  Batten v. Gomez, 324 F.3d 288, 294 (4th Cir. 2003).  Under § 15A-723, the executive authority from the state demanding extradition must make a written request to the governor of North Carolina for retrieval of the charged individual, attaching documentation of the criminal charge (e.g., the indictment or arrest warrant).  If the governor finds the documents to be in order, the governor will issue an arrest warrant for the fugitive, directed to an appropriate

---

[6]The court in Wirth emphasized, however, that "failure to comply with state or federal extradition laws does not constitute a defense to a criminal prosecution."  562 F.2d at 323. Therefore, even if Godfrey succeeded in proving his extradition claims, such a finding would have no effect on the state criminal judgments under which he is currently confined.

[7]When an extradition request involves an individual who is already a prisoner in the asylum state, procedures are generally governed by the Interstate Agreement on Detainers.  See N. C. Gen. Stat. § 15A-761.

8

state law enforcement official for execution.   § 15A-727.

> No person arrested upon such warrant shall be delivered over to the agent whom the
> executive authority demanding him shall have appointed to receive him unless he
> shall first be taken forthwith before a judge of a court of record in [North Carolina],
> who shall inform him of the demand made for his surrender and of the crime with
> which he is charged, and that he has the right to demand and procure legal counsel;
> and if the prisoner or his counsel shall state that he or they desire to test the legality
> of his arrest, the judge of such court of record shall fix a reasonable time to be
> allowed him within which to apply for a writ of habeas corpus. When such writ is
> applied for, notice thereof, and of the time and place of hearing thereon, shall be
> given to the prosecuting officer of the county in which the arrest is made and in
> which the accused is in custody, and to the said agent of the demanding state.

§ 15A-730.[8]  A petition for a writ of habeas corpus challenging extradition is extremely limited in

scope; the reviewing court may consider only "(a) whether the extradition documents on their face

are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c)

whether the petitioner is the person named in the request for extradition; and (d) whether the

petitioner is a fugitive." Michigan v. Doran, 439 U.S. 282, 289 (1978). The petitioner may also ask

the habeas court to determine whether a neutral judicial officer of the demanding state has made a

determination of reasonable grounds or probable cause that he has committed an offense in the

demanding state. Id. at 289-90.

Law enforcement officers acting in reliance on facially valid and complete extradition

paperwork may enjoy a "good faith" exception to liability for certain extradition shortcomings.

Wirth, 562 F.2d at 323 (citing Mabery v. Garrison, No. 77-1048 (4th Cir. 1976) (unpublished)

(finding that once receiving state warden in North Carolina received official approval from North

---

[8]Under § 15A-731, "Any officer who shall deliver to the agent for extradition of the
demanding state a person in his custody under the Governor's warrant, in willful disobedience to
G.S. 15A-730, shall be guilty of a Class 2 misdemeanor."

9

Carolina governor for inmate's extradition to New York, warden was mandated to surrender inmate to New York authorities, even though inmate had pending habeas action in North Carolina court concerning his extradition). The Eighth Circuit has held that police officers of the demanding state, carrying out a facially valid extradition, have no duty to make determinations that as to the propriety of the extradition proceedings conducted in the asylum state. Brown v. Nutsch, 619 F.2d 758, 765 (8th Cir. 1980) (citing Baker v. McCollan, 443 U.S. 137, 143-47 (1979)); Young v. Collier, 2006 WL 2706965, No. 6:03-3640-JFA (D.S.C. September 18, 2006) (unpublished). In the Brown decision, the court rejected plaintiff's argument that the transport officers from the demanding state were responsible for ensuring (or proving at a preliminary hearing) that plaintiff was the individual named in the extradition papers, the validity of the extradition papers and the signatures on those papers, and that plaintiff was a fugitive from justice; these findings, the court concluded, are the function of the habeas court in the asylum state. Brown, 619 F.2d at 764-65.

Even if the defendants violated Godfrey's extradition rights, they may be entitled to qualified immunity against his claims for monetary damages. Saucier v. Katz, 533 U.S. 194, 200 (2001). "[A]ssuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right." Brown v. Gilmore, 278 F.3d 362, 367 (4th Cir. 2002); see also Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In determining whether a right is clearly established, the court must look first to the decisions of the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the highest court of the state in which the case arose. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999). "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should

10

know the law governing his conduct." Harlow, 457 U.S. at 818-819. To escape liability under the qualified immunity defense in this case, the defendants have the burden of proving "that there exists a good faith explanation" for their failure to ensure that Godfrey had received extradition proceedings in North Carolina before transporting him to Virginia. Arebaugh, 730 F.2d at 972.

Godfrey alleges that he was in jail in North Carolina on separate charges until March 16, 2006, but that after his release from these charges, the deputies from Washington County apprehended him and transported him back to Virginia. Whether Godfrey was still a North Carolina prisoner or a free man when the Virginia deputies took control of him on March 16, 2006, it is undisputed that he had a right to a hearing and adjudication in a North Carolina court regarding Virginia's extradition demand before the deputies could lawfully transport him back to Washington County to face prosecution. § 15A-730; Cuyler v. Adams, 449 U.S. at 449-450. The NCUCEA also entitled him to an opportunity to bring habeas proceedings challenging Virginia's attempt to extradite him. Under controlling Fourth Circuit precedent, the Virginia officers may be liable under § 1983 if they extracted Godfrey from North Carolina without any evidence that he had first received these required procedural protections. Wirth, 562 F.2d at 323; Arebaugh, 730 F.2d at 972.

Defendant Newman states that he and his deputies received proper paperwork on March 16, 2006, "commanding" him to transport Godfrey to Virginia to face Virginia charges. The sheriff relies entirely on three attached documents as his authority for Godfrey's extradition:

1.    A capias from the Washington County Circuit Court, dated January 24, 2006, for the arrest of Johnny Frank Godfrey for offenses of conspiracy and grand larceny allegedly committed on March 29, 2005, as charged in an indictment dated January 24, 2006. This capias was executed on March 16, 2006, by N. E. Horn for F. Newman.

2.    A "Requisition Demand and Agent Authorization" from the governor of Virginia to the governor of North Carolina, dated February 17, 2006, stating that as demonstrated by the

11

attached indictment or capias, Johnny F. Godfrey stands charged with conspiracy and grand larceny committed in Virginia and that as Godfrey is a fugitive from justice believed to be located in North Carolina, Deputy William T. Slemp and Deputy Stephen G. Reed are appointed to receive Godfrey from the appropriate authorities in North Carolina and convey him to Virginia to stand trial. Paragraph 4 states, in pertinent part, "I do hereby respectfully demand that the said Johnny F. Godfrey be apprehended, secured and delivered to the above authorized Agent or designee who shall receive and convey him [to Virginia]." A hand-written note on the bottom of the form states: "Served by N.E. Horn #880, Washington Co. S.O. 095, 3-16-06."

3.      The front, unsigned page of a letter, dated February 24, 2006, from the office of the Attorney General of North Carolina to the Honorable David R. Satterfield at the Polk County Courthouse, stating:

> Dear Sheriff Satterfield:
> Enclosed are Governor Easley's warrant[9] and the supporting documents for the return of the above named fugitive to the State of Virginia.
> I respectfully call your attention to N.C.G.S. 15A-730. This statute provides that before delivering the accused to the agent designated by the demanding state, the accused shall first be taken by you before a judge of a court of record in this state, who shall inform him/her of the demand made for his/her surrender and of the crime with which he/she is charged. . . .
> When all statutory requirements have been complied with and the fugitive is ready to return to the demanding state, you are to notify: Dennis L. Godfrey, Commonwealth's Attorney, 191 Main Street, Abingdon, Virginia 24210.

The sheriff states that he "was not aware of any reason why" his deputies should not have carried out the Requisition Demand's authorization to receive Godfrey and transport him to Virginia. Therefore, his brief argues, the sheriff and Deputies Stophel and Slemp were acting in a good faith belief that they had authority for the extradition, and no material issue remains in dispute.

The court cannot agree that the sheriff's documents constitute a facially valid extradition authorization. The Requisition Demand, signed by Virginia's governor on February 17, 2006, authorized the deputies to receive Godfrey from North Carolina and demanded his delivery to the

---

[9]The warrant issued by Governor Easley is not part of the record in this case.

deputies only "pursuant to the provision of the Constitution and the Laws of the United States in such case"; this document did not command the sheriff immediately to execute an extradition or inform him that extradition proceedings were complete on February 17, 2006. Moreover, the accompanying letter to the Polk County sheriff, dated February 24, 2006, indicated that North Carolina's governor had issued a warrant approving Godfrey's extradition to Virginia, but that to the Attorney General of North Carolina's knowledge, no court hearing had yet been afforded to Godfrey as of February 24, 2006. The sheriff's submitted documentation does not include any court order or other document indicating either Godfrey's appearance in a North Carolina court or disposition of an extradition challenge.

The sheriff also relies on the fact that he received these documents on March 16, 2006, more than two weeks after the letter advised the Polk County sheriff to take Godfrey to court. The mere passage of time, however, is not sufficient evidence that Godfrey actually appeared in any North Carolina court for extradition proceedings. Moreover, the sheriff does not identify the source from which he received the documents or any other communication or direction he may have received from that source or any other source, concerning extradition proceedings for Godfrey in any the North Carolina court. Nor can the sheriff rely on the mere fact that Polk County jail officials released Godfrey to the Virginia officers as evidence that the extradition was proper.[10] While the Virginia officials may have had no duty to question a North Carolina court's determination that Godfrey had no valid legal challenge to the extradition, Virginia officials did have an obligation to verify that Godfrey had had an opportunity to challenge the extradition in the first place. Wirth, 562 F.2d at 323. Thus, the court finds material facts in dispute as to whether the sheriff had information

---

[10]The North Carolina jail officials are not defendants to this action.

constituting a facially valid authorization to transport Godfrey to Virginia on March 16, 2006.

Furthermore, the court cannot find that the sheriff has established any entitlement to qualified immunity here. In March 2006, the responsibilities of arresting officers in an extradition situation were firmly established by Wirth and Arebaugh, longstanding decisions by the Fourth Circuit, which expressly held that officials from the demanding state may not ignore the extradition rights provided to the suspect under the laws of the asylum state (in this case, the NCUCEA). Arebaugh, 730 F.2d at 972; Wirth, 562 F.2d at 323. Furthermore, the defendants cannot escape liability by claiming simple lack of awareness of Godfrey's extradition rights, as they are presumed to know their legal obligations regarding a suspect's extradition rights. Harlow, 457 U.S. at 818-819. The record as it currently exists does not demonstrate that the sheriff and his deputies had a reasonable basis for their asserted belief that Godfrey had been afforded his extradition rights on March 16, 2006, when Deputies Slemp and Reed carried out Sheriff Newman's order to transport Godfrey back to Washington County.

The court thus finds material facts in dispute as to whether Godfrey appeared before any state court in North Carolina regarding Virginia's extradition demand against him and as to whether the sheriff and his deputies had a reasonable belief that Godfrey had received the required extradition proceedings before March 16, 2006, when they removed him to Virginia. As such facts remain in dispute, the court must deny the sheriff's motion for summary judgment both as to his defense of qualified immunity and as to the merits of Godfrey's claims. The defendants do not object to amendment of the action to name Deputies Stophel and Slemp as the deputies allegedly involved in the wrongful extradition. Therefore the court will amend plaintiff's complaint to name these defendants and will direct the clerk to attempt service of process on them.

14

## B. MEDICAL CLAIMS

Defendants Huff and Evans, in their motions to dismiss, understate the difficulties of navigating Godfrey's pleadings when they describe his submissions as "largely inscrutable." His voluminous submissions mix rambling generalizations and garbled legal conclusions with occasional bursts of narrative, concerning complaints Godfrey has had about his incarceration at three or more jail facilities in Virginia since March 2006. In the course of this litigation, Godfrey has alleged that he suffers from a lengthy list of medical conditions that could present serious medical needs, including but not limited to: heart failure, emphysema, sight and hearing loss, failed lens implants, neurological neck and spine problems, severe headaches, dizzy spells and black outs, kidney problems, prostate trouble, hiatal hernia, diverticulitis, massive arthritis, problems with his stools, and central nerve damage. Godfrey generalizes that all of these conditions were diagnosed by specialists, who recommended treatment or surgery, and that the medical staff at the jail, including the jail doctor, reviewed his medical records, but disregarded all of these needs.

Out of an abundance of caution, given the potentially serious nature of these health problems, the court filed his complaint and granted Godfrey an opportunity to amend to make a more specific statement of his claims, identify individuals as defendants, and to allege specific facts concerning the conduct undertaken by each defendant in violation of his rights. Godfrey's apparent attempt to comply with this directive was to submit additional diatribes of generalization instead of any detailed statement of facts in support of each claim; he did, however, identify Tim Evans, Nurse Huff, and the sheriff as defendants. Again, out of an abundance of caution, the court held that Godfrey's allegations stated possible claims that the sheriff, Nurse Huff, and Tim Evans acted with deliberate indifference to his serious medical needs.

15

## 1. Exhaustion of Administrative Remedies

Defendant Huff first argues that Godfrey's medical claims should be dismissed because he failed to exhaust administrative remedies, as required pursuant to 42 U.S.C. § 1997e(a). Section 1997e(a) requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

To meet the exhaustion requirement of § 1997e(a), an inmate must follow each step of the established administrative procedure that the prison provides before filing his § 1983 action, including all levels of appeal provided by that procedure. See Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006).

Godfrey's exhibits include several Inmate Request/Complaint forms that he filed at SWVRJ, related to his allegations against Huff. On March 22, 2006, he filed a grievance complaining that he had not yet seen a doctor and was not receiving medications that he had brought with him when he was extradited from North Carolina. On March 24, 2006, he filed a grievance, stating that Ms. Huff had prescribed or ordered medications that he could not take and was not providing him with medications doctors had previously prescribed. On April 3, 2006, he filed a grievance indicating that he was not receiving all of his medication and that Huff forced him to give up his inhaler,[11] causing him to be very short of breath; he states that he needs a breathing machine. Huff does not offer any evidence that Godfrey had any higher level of administrative remedy at SWVRJ than the Inmate Request/Complaint forms he submits. Thus, taking the evidence in the light most favorable to Godfrey, the record indicates that at a minimum, Godfrey satisfied the exhaustion requirements of § 1997e(a) as to his allegations that Huff took away medications he brought with him to the jail and

---

[11]He also states that Evans ordered Huff to take Godfrey's inhaler.

16

prescribed other medications that he could not take and that Evans and Huff took away his inhaler, causing him to have trouble breathing. Therefore, Huff's exhaustion defense fails.

## 2. No Deliberate Indifference

Defendants Huff and Evans both argue that Godfrey's allegations fail to state any claim that they were deliberately indifferent to his medical needs. During the majority of his stay at the jail, Godfrey was a pretrial detainee. Due process prohibits officials from taking actions against pretrial detainees with the purpose or intent of punishing them, as their guilt has not yet been adjudicated. Claims concerning confinement conditions imposed upon pretrial detainees are to be evaluated under the Due Process Clause, rather than under the Eighth Amendment. Bell v. Wolfish, 441 U.S. 520, 535-538 (1979); United States v. Cobb, 905 F.2d 784 (4th Cir. 1990). However, as a practical matter, the contours of the Due Process Clause in the prison context tend to be coextensive with the substantive constitutional principles applied via the Eighth Amendment to convicted inmates. Hill v. Nicodemus, 979 F.2d 987, 991-92 (4th Cir. 1992) (medical needs). In determining the constitutionality of jail living conditions for a detainee, the court may also consider the limited length of detainee's stay in the facility. Bell, 441 U.S. at 542.

Prisoners are constitutionally entitled to necessary medical treatment of known, serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). To prove that his course of medical treatment amounted to a constitutional violation, an inmate must show that jail officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Id. at 104. Even when the inmate might prove a serious medical need, negligent diagnosis, medical malpractice, or officials' inadvertent failure to provide treatment do not present constitutional

17

deprivations.[12] Id. at 105-106; Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion."); Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975) (record reflects plaintiff "was under constant medical supervision from the time of his arrival at Botetourt. Questions of medical judgment are not subject to judicial review" under § 1983).

Plaintiff must demonstrate that each of the defendants was subjectively aware of the plaintiff's need and the seriousness of the risk of harm it presented. See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (finding that failure to diagnose and treat pituitary gland tumor did not state Eighth Amendment claim even though inmate ultimately went blind, because doctors reached alternative diagnosis and provided treatment). Officials who were not actually aware that a detainee's current condition presented a substantial risk of harm "cannot be said to have inflicted punishment" by failing to provide treatment or by delaying treatment. Farmer v. Brennan, 511 U.S. 825, 844 (1994). To prove deliberate indifference, then, the inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed, that he drew that inference, and failed to respond in a reasonable manner. Id. Officials show deliberate indifference to a serious medical need by completely failing to consider an inmate's complaints or by acting intentionally to delay or deny the prisoner access to adequate medical care. Estelle, 429 U.S. at 104.

---

[12] "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

To prove a medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. Id. at 855.

Ordinarily, when the court has previously held that a pro se litigant's pleadings state possible constitutional claims so as to survive screening under § 1915A, the court would deny a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim as not being well taken. In this case, however, Godfrey's allegations have expanded greatly since the court made the initial finding that his amended complaint survived summary dismissal under § 1915A. Upon review of the record as a whole, including all of Godfrey's many and voluminous submissions, the court now finds it appropriate to grant defendants' motions to dismiss for failure to state a claim.

Godfrey's inconsistent descriptions of his course of medical treatment simply do not rise to constitutional proportions. First, despite his dire pronouncements that jail officials had denied him all medical treatment, his own allegations demonstrate that he did, in fact, receive medical attention. In his post-complaint submissions, Godfrey has admitted that he was provided with medications, but refused to take them because they did not correspond directly and exactly with medications that specialists had prescribed or because he had not yet seen a jail doctor regarding the new prescriptions. He also expressed outrage at being charged for medications and claimed that he received outdated medication prescribed for another inmate.[13] While he was in isolation for some

---

[13]Godfrey complains several times about the fact that the jail charged him for medical treatment. The Eighth Amendment prohibits deliberate indifference to serious medical needs; it does not address how prisons must finance the medical care provided to prisoners. Indeed, the allocation

19

days, he allegedly received medication only once a day. He admits that Nurse Huff based her actions related to his treatment only after interviews with the jail doctor, but he complains that the doctor never examined him. He mentions that Nurse Huff provided him with X-rays at some point. Clearly, by his own admissions, Godfrey did receive extensive medical evaluation and treatment while at the jail.

Second, throughout this litigation and even in response to defendants' motions to dismiss, Godfrey has continued to avoid making any specific statement of treatment he requested, but did not receive from the named defendants. Although he allegedly suffers from many potentially serious medical problems, as to the vast majority of these conditions, he has failed to describe any specific symptom that he suffered during his brief tenure[14] at the jail that required immediate, different treatment than the medication and monitoring provided by the jail medical staff. Thus, he fails to demonstrate any specific, serious medical need for treatment that defendants failed to address.

Third, the alleged problems with medications that he received give rise to nothing more than possible medical malpractice claims. He complains that a nurse cannot prescribe or "take away" medications, that Nurse Huff provided outdated medication not intended for him, and that the medical staff failed to forward medical records with him when he was transferred to another jail. He also makes vague complaints completely unconnected to any of the named defendants–such as

_____

of the cost of such medical care is a matter of state law. See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 245 (1983). Godfrey does not allege that anyone at the jail denied him specific, necessary treatment because he could not pay for it. Therefore, his allegations fail to state any constitutional claim regarding charges he may have received for the medical care he received at the jail.

[14]The record now indicates that Godfrey was housed at the jail for approximately six weeks, from mid-March 2006 until May 1, 2006, before being transferred to another jail facility in Danville, Virginia.

failure to provide him access to medical specialists who had previously treated him, even after review of his medical records. These allegations indicate that the jail medical staff provided medical evaluation, diagnosis, and treatment, and Godfrey simply believes that their medical judgments about the proper course of treatment warranted by his condition in March and April 2006 were substandard or negligent. As stated, negligence does not present any constitutional claim actionable under § 1983.[15] Estelle, 429 U.S. at 106.

Fourth, the one specific instance when Godfrey alleges that the defendants took away his inhaler also fails to demonstrate deliberate indifference. Clearly, the staff assessed Godfrey's medical condition and someone made a medical judgment that the inhaler was not appropriate treatment for Godfrey, regardless of his own opinion. If this medical judgment was improper, then Godfrey might have malpractice claims for negligent diagnosis or treatment by the staff member who actually made that judgment. His allegations do not reflect, however, that his medical need for the inhaler was so obvious that the defendants must have known its absence created a substantial risk of serious harm to the inmate. He states that without the inhaler, he experienced shortness of breath and choking. While this condition was no doubt uncomfortable, his allegations do not indicate that lack of the inhaler was, in itself, life threatening in any way or that the jail's staff did not attempt to address this symptom with other medications being provided to him.

Fifth, Godfrey's allegations do not indicate the specific manner in which the sheriff and Tim Evans were involved in any of the medical judgments made about the appropriate course of treatment. As non-medical officials, these officers were entitled to rely on the medical staff to decide and provide proper treatment for Godfrey's medical problems. Moreover, the sheriff provides

---

[15]At best, plaintiff alleges negligence, which may be actionable under state law.

evidence that he has no personal involvement with any administrative decisions at the jail, including medical judgments.[16]

In short, Godfrey fails to allege specific facts indicating that the jail's medical staff, Nurse Huff included, or any non-medical staff, deprived him of specific treatment for specific, current symptoms while knowing that to do so placed him at substantial risk of harm. His failure to provide details in support of his conclusory statements that he was denied appropriate treatment is not enough to survive defendants' motions to dismiss. Because he fails to demonstrate deliberate indifference by any of these defendants to any specific, serious medical need, he states no constitutional claim against them. Accordingly, the court will grant the motions to dismiss by Tim Evans and Nurse Huff and will grant the sheriff's motion for summary judgment as to Godfrey's medical claims.

## C. ACCESS TO COURTS CLAIMS

Inmates have a guaranteed right to reasonable access to both state and federal courts and to communication with attorneys. Ex parte Hull, 312 U.S. 456 (1941); Procunier v. Martinez, 416 U.S. 396 (1974). "[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law" and other materials necessary to meaningful pursuit of litigation. Bounds v. Smith, 430 U.S. 817, 828 (1977). Bounds did not invest inmates with an independent right to a well-stocked prison law library or unlimited access to legal materials at the jail. Lewis v. Casey, 518 U.S. 343, 351 (1996). Where

---

[16]It is undisputed that the Washington County Jail closed several years ago and that Godfrey was housed at the Southwestern Virginia Regional Jail.

22

an inmate has had access to court and to his attorney, but alleges facts showing denial of some item necessary for meaningful pursuit of litigation, such as legal materials or postage, the inmate must allege facts showing actual injury or specific harm to his litigation efforts resulting from denial of the item. Id. Stated differently, an inmate must come forward with something more than vague and conclusory allegations of inconvenience or delay in his instigation or prosecution of legal actions; specifically, he must show that he was unable to file the initial complaint or that because of the alleged interference, a complaint he filed was so technically deficient that it was dismissed without consideration of the merits. Id. The fact that an inmate may not be able to litigate in exactly the manner he desires is not sufficient to demonstrate the actual injury element of an access to courts claim. Id. at 354. Even in a situation where an incarcerated defendant decides to waive appointed counsel and represent himself, the defendant is not entitled to access to a law library, as he may properly be required to rely on standby, court-appointed counsel to overcome any research handicaps imposed by incarceration. United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir. 1978). Moreover, state officials cannot be held liable under § 1983 for negligent actions which interfere with an inmate's litigation efforts. Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (citing Daniels v. Williams, 474 U.S. 327 (1986)).

Godfrey alleges that the sheriff and Tim Evans interfered with his ability to access the court while he was at the jail. Although he does not allege that he asked the sheriff personally for such access, he asserts that the sheriff is responsible for the alleged deprivations because of his supervisory position.[17] Godfrey alleges that Evans did not provide him or any other pretrial detainee

_____

[17]Even if Godfrey alleged an actionable claim for denial of access, he could not succeed with his argument that the sheriff is liable for actions of "his subordinates" at the jail. First, an official cannot be held automatically liable for violations of plaintiff's rights through the actions of

23

at the jail with access to a law library or legal assistance, refused to sign paperwork that Godfrey needed to prosecute this action, and denied him free postage and telephone privileges so that he could contact clergy or witnesses. Godfrey states that he had "other legal and court material while at [the jail] that he could not pursue to protect his due process and other rights."

Even assuming that Godfrey could prove that Evans denied him access to the law library, legal materials, postage, and telephone calls, he fails to allege any facts concerning specific harm that these deficits caused to his litigation efforts. He does not identify witnesses or the content of their testimony or explain why they were vital to his criminal case in Washington County. Even if such witnesses existed, jail officials properly relied on Godfrey's access to his court-appointed counsel for the criminal proceedings to assist him in contacting witnesses. Most importantly, Godfrey does not identify any specific legal claim or cause of action that he sought to bring, but could not bring, because he had limited access to legal materials and postage. Evans's alleged refusal to sign certain paperwork in this case did not prevent Godfrey's case from going forward, as evidenced by its current status. The court cannot find that Godfrey's allegations as a whole state any actionable claim that anyone at the jail deprived him of the right to access the courts and will grant defendants' motions to dismiss accordingly.

### D. OTHER CLAIMS

As stated, even Godfrey's most recent submissions include allegations about many other complaints he has had against prison officials in the last year. The following claims are not pending

---

subordinate officials; the doctrine of respondeat superior is inapplicable to § 1983 actions. Fisher v. Washington Metro. Area Transit Auth., 690 F.2d 1133, 1142-43 (4th Cir. 1982). Second, as previously discussed, the sheriff has submitted undisputed evidence that he has no authority over officers who operate the jail.

and will not be considered in this case, either because they have been dismissed by previous opinion and order or because they will be addressed in another case that Godfrey has pending before this court, Civil Action No. 7:06-cv-00360:

1. All claims challenging the fact or length of Godfrey's detention or the fairness of his criminal trials in Washington County and the City of Danville, Virginia;

2. All claims against James Cupp, the public defender appointed to represent Godfrey in the Danville criminal matters, or that attorney's supervisor, Mr. Shank;

3. All claims that Danville Jail officials denied Godfrey his right to access the courts, to access legal materials, or adequate medical treatment while he was housed at that jail;

4. All claims against Polk County, North Carolina, and officials there;

5. All claims concerning the grievance procedures at SWVRJ;

6. All claims concerning the following living conditions at the SWVRJ: denial of adequate food; the requirement that he be cuffed when out of his cell; denial of adequate recreation, fresh air, and sunlight; waiting in a cold cell for hours before transport to a court appointment; and denial of adequate in-cell communication devices to alert officers of safety risks.

7. All claims of retaliation by officials at SWVRJ; and

8. All claims of verbal harassment by guards at SWVRJ.

Because the defendants in this lawsuit had no personal involvement in any jail conditions complaints Godfrey may have had at Powhatan Correctional Center, Bland Correctional Center, or any other institution where he has been housed since he departed the jail, the court will dismiss all such claims without prejudice, pursuant to § 1915A.

The only other claim that Godfrey asserts against any of the defendants in this action is that the sheriff failed to ensure that Godfrey received an appropriate number of days of credit against his criminal sentence for time served and good conduct time earned while Godfrey was housed at the jail. "Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus." Muhammad v. Close, 540 U.S. 749, 750 (2004); Preiser v. Rodriguez,

Case 7:06-cv-00187-JCT-mfu   Document 92   Filed 08/17/07   Page 25 of 26   Pageid#: 573

411 U.S. 475, 500 (1973). Where an inmate's success in a § 1983 damages action would implicitly call into question the validity of the underlying conviction or duration of confinement, the inmate must first "achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." Id. at 751 (citing Heck v. Humphrey, 512 U.S. 477 (1994)). In this case, Godfrey does not demonstrate that he has presented his claims regarding jail credit or good conduct time to the appropriate state courts before submitting the claim here under § 1983. Unless he can demonstrate that he was entitled to credit against his sentence for the asserted jail credit and good conduct days, he cannot pursue a claim for damages against the sheriff or any other jail official, related to the alleged miscalculations of his term of confinement. Pursuant to § 1915A, the court will dismiss without prejudice this claim and all other extraneous § 1983 claims Godfrey attempts to raise outside the three claims identified and herein addressed by the court. An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This _17th_ day of August, 2007.

_James C. Turk_
Senior United States District Judge